## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ALICIA CHARLIE, *et al.*,

        Plaintiffs,

    v.                       CIVIL NO. 21-652 SCY/KK

REHOBOTH MCKINLEY CHRISTIAN
HEALTH CARE SERVICES,

        Defendant.

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

**SECTION:**                                                                                          **PAGE:**

I.        INTRODUCTION ................................................................................................ 2

II.       CASE SUMMARY ............................................................................................ 3

    A.    RMCHCS's Business. ............................................................................. 3

    B.    The Data Breach. ................................................................................... 3

    C.    Procedural Posture. ............................................................................... 4

    D.    History of Negotiations. ........................................................................ 5

III.     SUMMARY OF SETTLEMENT ..................................................................... 5

    A.    The Settlement Class. ............................................................................ 5

    B.    Settlement Benefits. .............................................................................. 6

        1.    Reimbursement for Lost Time and Ordinary Expenses. ........................... 6

        2.    Reimbursement for Extraordinary Expenses. .......................................... 7

        3.    Credit Monitoring Services. .................................................................. 7

        4.    Data Security Enhancements. ................................................................. 8

    C.    Notice. .................................................................................................. 8

    D.    Claims, Exclusions, and Objections Procedures. ................................. 9

        1.    Claims. ................................................................................................. 9

        2.    Exclusions. ........................................................................................... 9

        3.    Objections. ........................................................................................... 10

    E.    Service Awards, Fees, and Expenses. .................................................. 10

    F.    Release. ................................................................................................ 11

IV.    LEGAL STANDARD................................................................................................ 11

V.    LEGAL DISCUSSION............................................................................................. 12

    A.    The Court Should Certify the Settlement Class for Settlement Purposes Only.......... 12

        1.    The Settlement Class is so Numerous that Joinder is Impracticable. ...................... 13

        2.    Questions of Law and Fact are Common to the Settlement Class........................... 14

        3.    Plaintiffs' Claims and Defenses are Typical of the Settlement Class Members...... 14

        4.    Plaintiffs and Their Counsel Will Provide Fair and Adequate Representation for the Settlement Class.................................................................................................... 15

        5.    Questions of Law or Fact Common to Settlement Class Members Predominate Over Questions Affecting Only Individual Settlement Class Members, and A Class Action is Superior to Other Available Methods for Fairly and Effectively Adjudicating the Controversy............................................................................................................ 16

    B.    The Settlement Terms are Fair, Reasonable, and Adequate Under Federal Rule of Civil Procedure 23(e)(2) and the *Rutter* Factors............................................................. 17

        1.    The Settlement Terms are Fair, Reasonable, and Adequate Under Federal Rule of Civil Procedure 23(e)(2). ........................................................................................ 17

            a.    Class Counsel and Class Representatives Have Adequately Represented the Settlement Class.............................................................................................. 18

            b.    The Proposal Was Negotiated at Arms' Length............................................. 18

            c.    The Relief Provided to the Class is Adequate ................................................ 18

                i.    The Relief Provided to the Settlement Class is Adequate, Taking Into Account the Costs, Risks, and Delay of Trial and Appeal .................. 18

                ii. The Relief Provided to the Settlement Class is Adequate, Taking Into Account the Effectiveness of Any Proposed Method of Distributing Relief to the Settlement Class, Including the Method of Processing Settlement Class-Member Claims, If Required ....................................................... 20

iii. The Relief Provided to the Settlement Class is Adequate, Taking Into Account the Terms of Any Proposed Award of Attorneys' Fees, Including the Timing of the Payment.......................................................................... 21

iv. The Relief Provided to the Settlement Class is Adequate, Taking Into Account Any Agreement Required to Be Identified Under Rule 23(e)(3)... ................................................................................................................. 21

d.  The Settlement Treats Settlement Class Members Equitably Relative to Each Other ......................................................................................................... 22

2.  The Settlement Terms are Fair, Reasonable, and Adequate Under the *Rutter* Factors....................................................................................................................... 22

a.  Whether the Proposed Settlement Was Fairly and Honestly Negotiated ....... 22

b.  Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt................................................................................ 22

c.  The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation ............................. 24

d.  The Parties Believe the Settlement is Fair and Reasonable........................... 24

C.  The Proposed Claims Administrator Will Provide Adequate Notice. ....................... 25

D.  Appointment of the Claims Administrator. ................................................................ 26

E.  Appointment of Settlement Class Counsel. ............................................................... 26

VI.    CONCLUSION........................................................................................................... 27

# TABLE OF AUTHORITIES

**SECTION:**                                                                                    **PAGE:**

## CASES

*Adamson v. Bowen*,
    855 F.2d 668 (10th Cir.1988) ................................................................................. 15

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................................. 13

*Amoco Prod. Co. v. Fed Power Comm'n*,
    465 F2d. 1350 (10th Cir. 1984) ............................................................................. 12

*Baksh v. IvyRehab Network, Inc.*,
    No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) ....................................................... 19

*Bass v. PJCOMN Acq. Corp.*,
    No. 09-CV-01614-REB-MEH, 2011 WL 2149602 (D. Colo. June 1, 2011) ........... 14

*CGC Holding Co., LLC v. Hutchens*,
    773 F.3d 1076 (10th Cir. 2014) ............................................................................. 17

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
    No. 17-2142-JWB-KGG, 2020 WL 3288059 (D. Kan. June 18, 2020) ................... 20

*Cisneros v. EP Wrap-It Insulation, LLC*,
    Civ. No. 19-500 GBW/GJF, 2022 WL 2304146 (D. N.M. June 27, 2022) ........ 20, 21

*City of Gallup, New Mexico v. Hotels.com, L.P.*,
    No. 2:07-cv-00644-JAP/CG, 2013 WL 12201049, (D. N.M. Oct. 4, 2013) ......... 11, 12, 26

*DG v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) ............................................................................. 14

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ........... 23

*Hammond v. Bank of N.Y. Mellon Corp.*,
    No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ....... 23

*Hapka v. CareCentrix, Inc.*,
   No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ................................. 16

*In re Brinker Data Incident Litig.*,
   No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021).................. 13, 23

*In re Equifax Inc. Cust. Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021) .............................................................. 13

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ................................................................... 23

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012)...................................................... 13

*In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*,
   No. 19-MD-2879, 2022 WL 1396522 ....................................................... 13

*In re Motor Fuel Temp. Sales Pracs. Litig.*,
   MDL Nos. 1840, 07-MD-1840-KHV, 2011 WL 4431090 ...................................... 12

*In re Samsung Top-load Washing Machine Mkt'g, Sales Pracs. & Prods. Liab. Litig.*,
   MDL Case No. 17-ml-2792-D, 2020 WL 261671 ......................................... 20, 21

*In re Target*,
   309 F.R.D. 482 (D. Minn. 2015) .............................................................. 13

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No.: 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)............................ 16

*In re Thornburg Mortg., Inc. Secs. Litig.*,
   912 F. Supp. 2d 1178 (D. N.M. 2012)........................................................ 21

*Jones v. Nuclear Pharm., Inc.*,
   741 F.2d 322 (10th Cir. 1984) ........................................................... 11, 22

*Lopez v. City of Santa Fe*,
   206 F.R.D. 285 (D. N.M. 2002) .............................................................. 15

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ........................................................................ 18, 22

*Martinez v. Reams*,
  No. 20-cv-00977-PAB-SKC, 2021 WL 603054 (D. Colo. Feb. 16, 2021) ............................ 22

*Montgomery v. Continental Intermodal Group-Trucking LLC*,
  Case No. 2:19-cv-940 GJF, 2021 WL 1339305 (D. N.M. Apr. 9, 2021).............. 18, 19, 21, 22

*Mowery v. Saint Francis Healthcare Sys.*,
  No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) ................................................ 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306, 314 (1950) .............................................................................. 25

*New England Health Care Employees Pension Fund v. Woodruff*,
  520 F.3d 1255 (10th Cir. 2008) ...................................................................... 12

*Rex v. Owens ex rel. State of Okl.*,
  585 F.2d 432 (10th Cir. 1978) ........................................................................ 13

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .......................................................................... 15

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ...................................................................... 22

*Soseeah v. Sentry Ins.*,
  No. CIV 12-01091 RB/KK, 2016 WL 7435792 (D. N.M. Sept. 6, 2016). ............................ 14

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ........................................................................... 13

*United Food & Comm. Workers Union v. Chesapeake Energy Corp.*,
  281 F.R.D. 641 (W.D. Okl. 2012) .................................................................... 16

## **STATUTES**

Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, et seq. (2019). ........................ 4

New Mexico Unfair Practices Act ("UPA"), N.M. Stat. Ann.§§ 57-12-2, *et seq.* (1978) ............. 4

## **OTHER AUTHORITIES**

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) ............................................................. 11

## **RULES**

Fed. R. Civ. P. 12 .................................................................................................................... 18

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 4, 23

Fed. R. Civ. P. 23 ...................................................................... 1, 12, 17, 18, 19, 20, 21, 25

Fed. R. Civ. P. 23(a) ............................................................................................................ 13, 14

Fed. R. Civ. P. 23(a)-(b) ..................................................................................................... 12, 13

Fed. R. Civ. P. 23(b) ................................................................................................................. 16

Fed. R. Civ. P. 23(c) ................................................................................................................. 25

Fed. R. Civ. P. 23(e) ......................................................................................... 11, 17, 21, 26

Fed. R. Civ. P. 56 ...................................................................................................................... 23

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Alicia Charlie, Leona Garcia Lacey, Darrell Tsosie, and E.H., by and through his guardian, Gary Hicks (collectively, "Plaintiffs"), on behalf of themselves and a class of similarly situated individuals, hereby move this Court to:

1.      Preliminarily approve the Settlement described in the "Settlement Agreement and Release" between Plaintiffs and Defendant Rehoboth McKinley Christian Health Care Services ("RMCHCS" or "Defendant," together with Plaintiffs, the "Parties") and the attachments thereto, including the Short Form Notice, the Long Form Notice, the Claim Form, the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, and the [Proposed] Final Order and Judgment;

2.      Conditionally certify the Settlement Class;[1]

3.      Appoint Alicia Charlie, Leona Garcia Lacey, Darrell Tsosie, and E.H., by and through his guardian, Gary Hicks as Class Representatives;

4.      Appoint David K. Lietz and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC as Class Counsel;

5.      Approve a customary short form notice ("Short Form Notice") to be mailed to Settlement Class Members in a form substantially similar to that attached as **Exhibit A** to the Settlement Agreement;

6.      Approve a customary long form notice (the "Long Form Notice") to be posted on the Settlement Website in a form substantially similar to the one attached as **Exhibit B** to the Settlement Agreement;

---

[1] The capitalized terms used in this Motion and Memorandum shall have the same meaning as defined in the Settlement Agreement, except as may otherwise be indicated.

7.     Direct Notice to be sent to the Settlement Class Members in the form and manner proposed as set forth in the Settlement Agreement and **Exhibits A and B** thereto;

8.     Appoint Kroll Settlement Administration LLC as Claims Administrator;

9.     Approve the use of a Claim Form substantially similar to that attached as **Exhibit C** to the Settlement Agreement;

10.     Approve the use of an Exclusion Form substantially similar to that attached as **Exhibit F** to the Settlement Agreement; and

11.     Set a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's motion for award of fees, costs, expenses, and service awards.

This Motion is based upon: (1) this Motion; (2) the Settlement Agreement, with its accompanying exhibits, attached hereto as Exhibit 1; (3) the Declaration of David K. Lietz, attached as hereto as Exhibit 2; (4) the Declaration of Paul Ferruzzi, attached as Exhibit 3; (5) the Short Form Notice and Long Form Notice; (6) the Claim Form; (7) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, attached as **Exhibit D** to the Settlement Agreement; (8) the [Proposed] Final Order and Judgment, attached as **Exhibit E** to the Settlement Agreement; (9) the records, pleadings, and papers filed in this action; and (10) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion. In support of this Motion, Plaintiffs hereby submit the following Memorandum of Law ("Memorandum").

# I.     INTRODUCTION

This class action lawsuit arises out of a targeted cyberattack on RMCHCS's computer network that resulted in unauthorized access and exfiltration of highly sensitive, personal data. Plaintiffs provided their personally identifiable information ("PII") and personal health

information ("PHI") to RMCHCS. The cybercriminals infiltrated and exfiltrated RMCHCS's systems and the PII and PHI of approximately 191,009 persons during the cyberattack, including Plaintiffs (the "Data Breach"). After receiving notice of the data breach from RMCHCS, Plaintiffs subsequently filed a lawsuit in the Eleventh Judicial District Court for the County of McKinley in the State of New Mexico, which was removed to this Court.

After protracted, arms' length settlement negotiations for months, the Parties have reached a settlement that is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request this Court to grant their Unopposed Motion for Preliminary Approval of Class Action Settlement.

## II.    CASE SUMMARY

### A.    RMCHCS's Business.

RMCHCS is a 501(c)(3) not-for-profit healthcare network located in Gallup, New Mexico. *See Class Action Complaint* ("Complaint" or "*Comp.*"), ¶ 26 **(Doc. 1.)** RMCHCS offers a wide range of medical and diagnostic services and provides healthcare for people living in McKinley County, New Mexico, and eastern Arizona. *See Comp.*, ¶ 27. **(Doc. 1.)** RMCHCS operates a 60-bed acute care hospital, two outpatient clinics, home health, hospice, and behavioral health services. *See Comp.*, ¶ 28. **(Doc. 1.)**

### B.    The Data Breach.

On February 16, 2021, RMCHCS became aware of a cybersecurity incident by an unauthorized third-party that resulted in the removal of certain PII and PHI from its network. *See Comp.*, ¶¶ 1, 39, 40-41. **(Doc. 1.)** After an investigation, RMCHCS determined that the unauthorized third-party accessed systems containing PII and PHI and removed some data between January 21 and February 5, 2021. *See Comp.*, ¶ 41. **(Doc. 1.)** The PII and PHI that was potentially accessed during the Data Breach included varies, but may have included for some persons names,

addresses, dates of birth, phone numbers, email addresses, Social Security numbers, drivers'
license numbers, passport and (for Native Americans) tribal identification an Alien Registration
numbers, medical and health insurance information, and employment and/or financial account
information. *See Comp.*, ¶¶ 42. **(Doc. 1.)** The investigation revealed that 191,009 individuals were
victims of the Data Breach. *See Comp.*, ¶¶ 41, 43. **(Doc. 1.)** RMCHCS notified victims of the Data
Breach on May 19, 2021. *See Comp.*, ¶ 45. **(Doc. 1.)**

### C.    Procedural Posture.

On June 4, 2021, Plaintiffs filed a lawsuit against RMCHCS in the Eleventh Judicial
District Court for the County of McKinley in the State of New Mexico. **(Doc. 1.)** Plaintiffs brought
eight causes of action for: (i) negligence, (ii) intrusion upon seclusion/invasion of privacy, (iii)
negligence *per se*, (iv) breach of implied contract, (v) breach of fiduciary duty, (vi) unjust
enrichment, (vii) violation of New Mexico Unfair Practices Act, NMSA 1978 §§ 57-12-2 *et seq.*,
and (xiii) violation of Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521 *et seq. See Comp.*,
¶¶ 139-245. **(Doc. 1.)** Plaintiffs alleged that RMCHCS failed to adequately protect and safeguard
their PII and PHI and failed to provide them with adequate notice of the Data Breach. *See Comp.*
¶¶ 6, 70-71. **(Doc. 1.)** RMCHCS removed the lawsuit to this Court on July 15, 2021. **(Doc. 1.)**

On August 17, 2021, RMCHCS filed a Motion to Dismiss the Plaintiffs' entire Complaint
for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). **(Doc. 15.)** *See* Fed. R.
Civ. P. 12(b)(6). RMCHCS's Motion to Dismiss was fully briefed on October 12, 2021. **(Docs.
22; 28.)** This Court granted in part and denied in part RMCHCS's Motion to Dismiss on April 11,
2022. **(Doc. 32.)** Specifically, the Court dismissed without prejudice Plaintiffs' claims for: (i)
intrusion upon seclusion/invasion of privacy; (ii) breach of implied contract; and (iii) violation of
the Arizona Fraud Act, Ariz. Rev. Stat. §§ 44-1521 *et seq.* (insofar as it was based upon affirmative

misrepresentations), but denied RMCHCS's motion in all other respects. *See id.* RMCHCS subsequently answered the Complaint on May 12, 2022 (the "Lawsuit"). **(Doc. 36.)**

###### D.    History of Negotiations.

After the vigorously contested motion to dismiss, the Parties engaged in protracted, arms' length settlement negotiations for months since the Court's Order on RMCSCS's Motion to Dismiss. *See* Declaration of David K. Lietz ("Lietz Decl."), ¶ 35. During this period, RMCHCS produced formal discovery to Plaintiffs, and the Parties exchanged informal discovery, including information about the scope and cause of the Data Breach and size of the class. *See id* ¶ 36. After extensive discussion and prolonged, non-collusive negotiations, the Parties reached an agreement on the principal terms of the Settlement, subject to final mutual agreement on all necessary documentation. *See id* ¶ 36. While the Parties here did not employ the services of a professional mediator here, this settlement resembles other settlements that opposing counsel have successfully negotiated using mediators with considerable experience in data breach cases. In the months following the agreement, the Parties continued to negotiate the finer details of the Settlement Agreement and accompanying exhibits. *See id* ¶ 38. While negotiations were always collegial and professional between the Parties, there is no doubt that the negotiations were also adversarial in nature, with both Parties strongly advocating their respective client's positions. *See id.* ¶ 35. The Settlement Agreement and exhibits were finalized on October 25, 2022. *See id* ¶ 38.

## III.    SUMMARY OF SETTLEMENT

### A.    The Settlement Class.

The settlement will provide substantial relief to a proposed Settlement Class consisting of:

> All persons to whom on or about May 19, 2021 Rehoboth McKinley Christian Health Care Services sent Notice of a Data Breach that was discovered on February

16, 2021, which involved an unauthorized person gaining access to certain systems containing PII/PHI.

S.A. ¶ 1. The Settlement Class specifically excludes:

> (i) RMCHCS's officers and directors; (ii) any entity in which RMCHCS has a controlling interest; and (iii) the affiliates, legal representatives, attorneys, successors, heirs, and assigns of RMCHCS (not including employees); and (iv) members of the judiciary to whom this case is assigned, their families and members of their staff.

*Id.* The Settlement Class is comprised of approximately 191,009 individuals. *See id.*

### B.    Settlement Benefits.

The Settlement negotiated on behalf of the Settlement Class provides for four (4) categories of relief for Settlement Class Members: (1) reimbursement for lost time (up to four (4) hours at $15 per hour) and ordinary out-of-pocket expenses up to $500; (2) reimbursement for extraordinary losses up to $3,500; (3) two (2) years' free credit monitoring services; and (4) equitable relief in the form of security improvements to RMCHC's systems. *See id.* ¶¶ 3(a)-(d), 4. While the lost time and expense reimbursements are capped on an individual basis, they are uncapped in the aggregate, meaning high claims rates will not lead to any *pro rata* reduction amongst the Settlement Class Members—each individual and qualified claimant can receive the full $4,000 monetary benefit, plus the credit monitoring and the data security enhancements.

### 1.    Reimbursement for Lost Time and Ordinary Expenses.

The first category of benefits provides Settlement Class Members who submit a valid claim up to $500.00 per person for reimbursement of ordinary expenses incurred as a result of the Data Breach, such as: bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; and fees for credit reports, credit monitoring, or other identity theft insurance

product purchased between May 19, 2021 and the date of the Settlement Agreement. *See id.* ¶ 3(b). As part of the $500.00 ordinary expense reimbursement, Settlement Class Members who submit a valid claim may also receive compensation at $15.00 per hour, for a maximum of $60.00 per person, for up to four (4) hours' lost time spent dealing with the Data Breach, if at least one (1) full hour was spent dealing with the Data Breach. *See id.* The Settlement Class Member must attest that he or she spent the claimed time responding to issues raised by the Data Breach. *See id.*

### 2. Reimbursement for Extraordinary Expenses.

The second category of benefits allows Settlement Class Members who submit a valid claim to collect up to $3,500.00 per person in compensation to each Settlement Class Member who was the victim of actual documented identity theft for proven monetary loss if:

i. The loss is an actual, documented, and unreimbursed monetary loss;

ii. The loss was more likely than not caused by the Data Breach;

iii. The loss occurred during between May 19, 2021 and the date of the Settlement Agreement;

iv. The loss is not already covered by one or more of the normal reimbursement categories above; and the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

*See id.* ¶ 3(c).

### 3. Credit Monitoring Services.

The third category of benefits allows Settlement Class Members to make a claim for two (2) years of free credit monitoring services. *See id.* ¶ 3(d). If a Settlement Class Member claims this benefit, he or she will be mailed (or emailed, if he or she prefers) an activation code and instructions to enroll in the services once the Settlement becomes final. *See id.* Ex. C. This

Settlement benefit bears with it significant value. The least expensive credit monitoring services product available in the retail marketplace today costs approximately $9.99 per month.[2] *See* Lietz Decl., ¶ 45. Thus, the potential value of two (2) years of this benefit is as high as $239.76 per Settlement Class Member. If an extremely modest 2% of the estimated 191,009 Settlement Class Members make claims for this benefit, the potential value of this benefit is as high as $915,926.35.

### 4. Data Security Enhancements.

The final category of benefits provided for in the Settlement Agreement is equitable in nature. RMCHCS has implemented security-related improvements since the Data Breach designed to better protect Plaintiffs' and Settlement Class Members' PII and PHI in the future. *See id.* ¶ 4.

### C. Notice.

The Parties agreed to use Kroll Settlement Administration LLC ("Kroll") as the Claims Administrator— a company that specializes in class action notice and claims administration (the "Claims Administrator"). *See generally* Declaration of Paul Ferruzzi ("Ferruzzi Decl.").

Within ten (10) days after entry of the Preliminary Approval Order, RMCHCS will provide a class list to the Claims Administrator with the last-known names, addresses, and emails (if any) of the Settlement Class Members. By no later than thirty (30) days following entry of the Preliminary Approval Order ("Notice Deadline"), the Claims Administrator will mail or email (if available) the Short Form Notice to Settlement Class Members.[3] *See* S.A. ¶ 13. The Short Form

---

[2] https://buy.aura.com/ (last visited Oct. 20, 2022).
[3] Before the mailing or emailing of direct notice, the Claims Administrator will run the Settlement Class Members' addresses through a reliable service of the Claims Administrator's choosing. *See id.* ¶ 13. If a mailing comes back as undelivered, and has a forwarding address, the Claims Administrator will re-mail the mailing one additional time to the new address. *See id.* (If an email is undelivered, the Claims Administrator will make one more attempt at email, and if unsuccessful, will mail the notice. *See id.*)

Notice is clear and concise, and provides information about the Settlement, as well as the sources Settlement Class Members can go to for additional information. *See id.* Ex. A. The Claims Administrator will also establish and maintain a dedicated Settlement Website that will be updated throughout the claims period with the Short Form Notice, Long Form Notice, and Claim Form, the Settlement Agreement, and other relevant court documents. *See id.* ¶ 8(a). Finally, the Claims Administrator will establish and maintain a toll-free help line and designated P.O. Box to provide Settlement Class Members with additional information about the settlement. *See id.*

RMCHCS will pay for the cost of providing notice and Settlement Administration, separate and apart from the other relief available to Settlement Class Members, which is, in itself, a benefit to the Settlement Class. *See id.* ¶ 8(c).

### D.    Claims, Exclusions, and Objections Procedures.

#### 1.    Claims.

Settlement Class Members will have ninety (90) days from the Notice Deadline to complete and submit a claim to the Claims Administrator. *See id.* ¶ 13. The Claim Form, attached to the Settlement Agreement at **<u>Exhibit C</u>**, is written in plain language to facilitate Settlement Class Members' ease in completing it. *See id.* Ex. C. Claim Forms can be submitted either online through the Settlement Website or via U.S. Mail to the Claims Administrator. *See id.* ¶¶ 8, 13.

#### 2.    Exclusions.

Settlement Class Members will have up to and including sixty (60) days following the Notice Deadline to exclude themselves from the Settlement. *See id.* ¶ 14. To be considered valid, the request for exclusion must: (i) be timely mailed to the P.O. Box established by the Claims Administrator; (ii) be in writing; (iii) state the name, address, and phone number of the person seeking exclusion; and (iv) must contain a signed statement to the following effect: "I request to

9

be excluded from the Settlement Class in the RMCHCS lawsuit." *See id.* Any Settlement Class Member who elects to be excluded shall not: (i) be bound by any order or the judgment; (ii) be entitled to relief under the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement Agreement.[4]

### 3. Objections.

Settlement Class Members will also have up to and including sixty (60) days following the Notice Deadline to object to the Settlement. *See id.* ¶ 15. The timing with regard to objections is structured to give Settlement Class Members sufficient time to review the Settlement documents— including Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards, which will be filed fourteen (14) days prior to Opt-Out and Object Deadlines.

Any Settlement Class Member who wishes to object must timely file with the Court and mail to Class Counsel and RMCHCS's counsel written objections that include: (i) the title of the case; (ii) the Settlement Class Member's name, address, and telephone number; (iii) all legal and factual bases for any objection; and (iv) copies of any documents that the Settlement Class Member wants the Court to consider. *See id.* If a Settlement Class Member wishes to appear at the Final Approval Hearing, he or she must so state and identify any documents or witnesses he or she intends to call on his or her behalf. *See id.* Any Settlement Class Member who fails to object in this manner will be deemed to have waived any objections. *See id.*

### E. Service Awards, Fees, and Expenses.

The Settlement calls for a Service Awards to Plaintiffs in the amount of $2,500.00 per Plaintiff, and combined attorneys' fees, costs, and expenses in an amount not to exceed

---

[4] An Exclusion Request Form is attached to the Settlement Agreement as **Exhibit F**.

$300,000.00, subject to approval of the Court. *See id.* ¶¶ 8(a)-(b). The Service Awards, as well as attorneys' fees, costs, and expenses, will be paid separate and apart from the benefits available to Settlement Class Members. *See id.* The payment of attorneys' fees, costs, and expenses and Service Awards were negotiated after the primary terms of the Settlement were negotiated. *See id.*

     **F.**     **Release.**

The release is tailored to the claims that have been plead or could have been plead relating to the specific Data Breach. *See id.* ¶ 10. Settlement Class Members who do not exclude themselves from the Settlement will release claims against RMCHCS related to the Data Breach. *See id.*

## IV.    LEGAL STANDARD

"'The trial court exercises discretion to approve a class action settlement.'" *City of Gallup, New Mexico v. Hotels.com, L.P.*, No. 2:07-cv-00644-JAP/CG, 2013 WL 12201049, at *2 (D. N.M. Oct. 4, 2013) (citing *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)). In doing so, "'the trial court must approve a settlement if it is fair, reasonable, and adequate.'" *Id.* "Review of a proposed class action settlement generally involves two stages." *City of Gallup, New Mexico*, No. 2:07-cv-00644-JAP/CG, 2013 WL 12201049, at *2.

*"*First, counsel submits the proposed terms of the settlement, and the judge makes a *preliminary* fairness evaluation.'" *Id.* (quoting *Manual for Complex Litigation* § 21.632, at 320 (4th ed. 2004) (emphasis in original)). "If the court preliminarily approves the proposed settlement, it then directs the form and manner of notice that must be provided to class members under Rule 23(e)(1)." *Id.* Class members must be given "reasonable notice and the opportunity to object to the proposed settlement prior to the final approval" of the Settlement. *See id.* Courts will ordinarily grant preliminary approval if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temp. Sales Pracs. Litig.*, MDL Nos. 1840, 07-MD-1840-KHV, 2011 WL 4431090, at *5 (D. Kan. Sept. 22, 2011). Second, "at the *final* approval hearing, the court determines whether the proposed settlement is fair, reasonable, and adequate under all of the circumstances." *City of Gallup, New Mexico*, No. 2:07-cv-00644-JAP/CG, 2013 WL 12201049, at *2 (emphasis in original).

Tenth Circuit courts strongly encourage settlements as a method resolving disputes between parties. *See, e.g., New England Health Care Employees Pension Fund v. Woodruff*, 520 F.3d 1255, 1258 (10th Cir. 2008); *Amoco Prod. Co. v. Fed Power Comm'n*, 465 F2d. 1350, 1354 (10th Cir. 1984). "'This is especially true in complex class actions.'" *City of Gallup, New Mexico*, No. 2:07-cv-00644-JAP/CG, 2013 WL 12201049, at *1.

## V.    LEGAL DISCUSSION

### A.    The Court Should Certify the Settlement Class for Settlement Purposes Only.

Plaintiffs seek certification, for settlement purposes only, of a class consisting of approximately 191,009 "persons to whom on or about May 19, 2021 RMCHCS sent Notice of a Data Breach that was discovered on February 16, 2021, which involved an unauthorized person gaining access to certain systems containing PII/PHI." *See* S.A. ¶ 1; Lietz Decl., ¶¶ 32-33.

Under Rule 23(a)-(b), a class action may be maintained where the movant demonstrates:

> (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. [Additionally, a] class may be maintained if Rule 23 is satisfied and the court finds that the questions of law or fact common predominate over any questions affecting only individual members, and that a class action is superior to other available methods available for fairly and efficiently adjudicating the controversy.

*See* Fed. R. Civ. P. 23(a)(1)-(4) & (b)(3). A court's class certification evaluation is somewhat different in a case that has not settled. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification issues, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Despite the rigorous analysis prongs at the preliminary certification stage, class actions are regularly certified for settlement. In fact, similar data security incident cases have been certified – on a *national* basis. *See, e.g., In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, No. 19-MD-2879, 2022 WL 1396522, at *1 (D. Md. May 3, 2022); *In re Equifax Inc. Cust. Data Sec. Breach Litig.*, 999 F.3d 1247, 1274-75 (11th Cir. 2021); *In re Brinker Data Breach Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021) (slip copy); *In re Target Cust. Data Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

### 1. The Settlement Class is so Numerous that Joinder is Impracticable.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no specific numerical requirement, forty class members generally satisfies the requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (holding 40 class members normally satisfies numerosity). The Tenth Circuit has found that "class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432 (10th Cir. 1978). Here, the Settlement Class clearly surpasses the threshold to establish numerosity with 191,009 individuals. As such, the numerosity requirement is easily satisfied.

**2. Questions of Law and Fact are Common to the Settlement Class.**

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require that all class members share identical situations, and factual differences among the claims of the class members does not defeat certification. *See DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). The threshold for meeting this prong is not high—the requirement is satisfied where the plaintiff asserts claims that "raise a common contention" of such a nature "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Soseeah v. Sentry Ins.*, No. CIV 12-01091 RB/KK, 2016 WL 7435792, at *4 (D. N.M. Sept. 6, 2016). Here, Plaintiffs can demonstrate numerous common issues exist. For example, whether RMCHSC had a duty to safeguard the PII and PHI of Plaintiffs and Settlement Class Members, and whether RMCHSC breached that duty, are questions common across the entire class. These common questions, and others, alleged by Plaintiffs in their Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. *See Comp.*, ¶ 133. **(Doc. 1.)**

**3. Plaintiffs' Claims and Defenses are Typical of the Settlement Class Members.**

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Bass v. PJCOMN Acq. Corp.*, No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *2 (D. Colo. June 1, 2011). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3), so long as the claims of the class

representative and class members are based on the same legal or remedial theory." *Id*. (quoting *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988)). Here, Plaintiffs' and Settlement Class Members' allegations all stem from the *same* event—the Data Breach, and the cybersecurity protocols that RMCHCS had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' PII and PHI. Thus, Plaintiffs' claims are typical of the Settlement Class Members.

### 4. Plaintiffs and Their Counsel Will Provide Fair and Adequate Representation for the Settlement Class.

To satisfy the adequacy requirement: "(1) the class representative must not have interests antagonistic to those of the class, and (2) the attorney representing the class must be qualified, experienced, and generally able to conduct the proposed litigation." *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289-90 (D. N.M. 2002). Here, Plaintiffs' interests are not antagonistic to those of the class. Their interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the *same* Data Breach. Plaintiffs' and Settlement Class Members' data was all impacted as a result of the Data Breach in the same manner. Plaintiffs and Settlement Class Members will all be eligible for the same relief.[5] Further, Class Counsel have decades of combined experience as vigorous class action litigators—with an emphasis in data breach litigation—and are well suited to advocate on behalf of the class. *See* Lietz Decl., ¶¶ 2-19. They have negotiated an early-stage settlement that guarantees significant, immediate relief to class members.

---

[5] Plaintiffs also intend to apply for Service Awards in the amount of $2,500 each. These awards "are fairly typical in class action cases" and are intended to compensate class representatives for participation in the litigation. *See Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009). Service Awards to the Plaintiffs are appropriate here, given the efforts and participation of Plaintiffs in the litigation, and do not constitute preferential treatment, particularly where any Settlement Class Member may claim more in compensation than the amount of the proposed Service Awards. The named Plaintiffs were not promised a Service Award, nor did they condition their representation on the expectation of a Service Award. Lietz Decl., at ¶ 66.

> **5. Questions of Law or Fact Common to Settlement Class Members Predominate Over Questions Affecting Only Individual Settlement Class Members, and A Class Action is Superior to Other Available Methods for Fairly and Effectively Adjudicating the Controversy.**

The inquiry under Rule 23(b)(3) is two-fold:

*First*, in order to predominate, the Court must "find[] that questions of law or fact common to class members predominate over any questions affecting only individual members." *United Food & Comm. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655 (W.D. Okl. 2012). Here, the common questions that arise from RMCHCS's conduct predominate over any individualized issues. Key predominating questions include whether RMCHCS had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII and PHI of Plaintiffs and the Settlement Class, and whether RMCHCS breached that duty.

Indeed, other courts have recognized these types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (finding predominance where plaintiffs' liability case depended on "whether [defendant' used reasonable data to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [defendant] properly secured the stolen personal information"); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Cust. Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common issues predominating; questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so,

and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied, despite variations in state laws at issue, concluding variations went only to trial management, which did not apply in settlement context).

*Second*, the resolution of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of individual data breach cases arising out of the *same* Data Breach. "[C]lass treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014).

Accordingly, the requirements of Federal Rule of Civil Procedure 23 are satisfied, and the Settlement Class should be provisionally certified for settlement purposes only.

    B.     **The Settlement Terms are Fair, Reasonable, and Adequate Under Federal Rule of Civil Procedure 23(e)(2) and the *Rutter* Factors.**

        1.     **The Settlement Terms are Fair, Reasonable, and Adequate Under Federal Rule of Civil Procedure 23(e)(2).**

In determining whether a class action settlement is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2) requires the trial court to find:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arms' length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including the timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

a. Class Counsel and Class Representatives Have Adequately Represented
the Settlement Class

This factor focuses "'on the actual performance of counsel acting on behalf of the class.'"

*Montgomery v. Continental Intermodal Group-Trucking LLC*, Case No. 2:19-cv-940 GJF, 2021

WL 1339305, at *4 (D. N.M. Apr. 9, 2021) (quoting Fed. R. Civ. P. 23 Advisory Comm. Notes).

Here, as set forth in Section V.A.IV, *supra*, Class Counsel and Plaintiffs have adequately

represented the Settlement Class, evidenced by the Settlement Agreement which provides

outstanding relief on behalf of the Settlement Class.

b. The Proposal Was Negotiated at Arms' Length

"The second factor focuses on whether the settlement negotiations 'were conducted in a

manner that would protect and further the class interests.'" *Id.* (quoting Fed. R. Civ. P. 12

(Advisory Comm. Notes)). Here, the negotiations occurred at arm's length by experienced

litigation counsel, which are presumed to be fair, reasonable, and adequate. *See Lucas v. Kmart

Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). The Parties produced formal and informal discovery,

including information about the scope and cause of the Data Breach and class size. *See* Lietz Decl.,

¶ 36. After extensive, non-collusive negotiations, the Parties reached an agreement on the principal

terms of the Settlement. *See id.* ¶ 36. The Parties continued to negotiate the finer details of the

Settlement Agreement and its exhibits over the next several months. *See id.* ¶ 38. The negotiations

were adversarial, but professional. *See id.* ¶ 35. Also, the negotiations furthered the Settlement

Class's interests, given the substantial relief achieved on behalf of the Settlement Class.

c. The Relief Provided to the Class is Adequate

i. *The Relief Provided to the Settlement Class is Adequate, Taking
Into Account the Costs, Risks, and Delay of Trial and Appeal*

18

This "factor recognizes that while 'the relief that the settlement is expected to provide to class members is a central concern,' such relief must be viewed in relation to 'cost and risk involved in pursuing a litigated outcome.'" *Montgomery*, Case No. 2:19-cv-940 GJF, 2021 WL 1339305, at *6 (quoting Fed. R. Civ. P. 23 (Advisory Comm. Notes)). Here, the Settlement provides real, immediate value to the Settlement Class Members. *First*, Settlement Class Members are for up to $500.00 in ordinary expense reimbursements and lost time. If a modest 2% of the 191,009 Settlement Class Members make valid claims for this benefit, the potential value of this benefit is as high as $1,910,090.00. *Second*, Settlement Class Members are also eligible for up to $3,500.00 for reimbursement of extraordinary losses, a benefit that carries astronomical potential benefit with it. *Third*, Settlement Class Members are eligible for two (2) years of free credit monitoring potentially valued as high as $915,926.35. *Lastly*, Settlement Class Members will benefit the security-related measures implemented by RMCHCS.[6]

The substantial relief provided in the Settlement is *more* than adequate.. Without settlement, the Parties will likely engage in extensive, costly discovery and motion practice over liability, and then damages, and, if Plaintiffs survive these rounds of briefing, a trial will ensue, with likely appeals to follow. The immediate, substantial relief available to Settlement Class Members under the Settlement surely outweighs these risks, delays, and costs of litigation.

---

[6] The Settlement terms are consistent with, and in fact better than, agreements approved by courts in other, similar data breach cases. *See, e.g., Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements;); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements).

ii.    *The Relief Provided to the Settlement Class is Adequate, Taking Into Account the Effectiveness of Any Proposed Method of Distributing Relief to the Settlement Class, Including the Method of Processing Settlement Class-Member Claims, If Required*

"Under this factor the court, 'scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims' and 'should be altered to whether the claims process is unduly demanding.'" *Id.* (quoting Fed. R. Civ. P. 23 (Advisory Comm. Notes)). The method of processing claims is "simple, straightforward, and nonburdensome." *In re Samsung Top-load Washing Machine Mkt'g, Sales Pracs. & Prods. Liab. Litig.*, MDL Case No. 17-ml-2792-D, 2020 WL 261671, at *16 (W.D. Okl. May 22, 2020) (slip op.). **Settlement Class Members may either submit a Claim Form online on website or download a Claim Form from the website and mail it to the P.O. box established by the Claims Administrator.** Nor should it be difficult for them to offer proof of a claim because they only have to timely return a signed Claim Form to do so. *See Cisneros v. EP Wrap-It Insulation, LLC*, Civ. No. 19-500 GBW/GJF, 2022 WL 2304146, at *6 (D. N.M. June 27, 2022) (slip op.). The method of distributing relief to the Settlement Class is also effective. RMCHCS will provide the settlement funds to the Claims Administrator to pay undisputed approved claims within fifteen (15) days of the Effective Date, and the Claims Administrator will pay approved claims by check as soon as reasonably practicable thereafter.[7] *See Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *3 (D. Kan. June 18, 2020) (checks distributed by hand and/or by mail met Rule 23 requirement); S.A. ¶ 6(a)-(b).

---

[7] If RMCHCS disputes an approved claim, it goes through a Claims Dispute process. *See* S.A. ¶ 6.A. If the Claims Referee upholds a disputed claim, RMCHCS must, within either five (5) business days thereafter or within fifteen (15) days after the Effective Date, whichever is later, provide the settlement funds to the Claims Administrator, and the Claims Administrator will pay the approved claim as soon as reasonably practicable thereafter. *See id.*

       iii.    *The Relief Provided to the Settlement Class is Adequate, Taking Into Account the Terms of Any Proposed Award of Attorneys' Fees, Including the Timing of the Payment*

"This factor recognizes that '[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement.'" *Montgomery*, Case No. 2:19-cv-940 GJF, 2021 WL 1339305, at *7 (quoting Fed. R. Civ. P. 23 (Advisory Comm. Notes)). Here, Class Counsel intends to seek an award of attorneys' fees, costs, and expenses in an amount not to exceed $300,000.00, which is *well* below 10% of the overall value of the Settlement. The proposed attorneys' fees, costs, and expense request is well within the range of reasonableness for settlements of this nature and size. *See, e.g., In re Thornburg Mortg., Inc. Secs. Litig.*, 912 F. Supp. 2d 1178, 1257 (D. N.M. 2012) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.") (internal quotations omitted)).

       iv.    *The Relief Provided to the Settlement Class is Adequate, Taking Into Account Any Agreement Required to Be Identified Under Rule 23(e)(3)*

This factor requires scrutiny of any 'side agreements' to settle the claims of objectors … to the settlement agreement." *In re Samsung Top-load Washing Machine Mkt'g, Sales Pracs. & Prods. Liab. Litig.*, MDL Case No. 17-ml-2792-D, 2020 WL 261671, at *18. "Where there are no 'side agreements,' this requirement is satisfied when the parties have filed the Settlement Agreement and plan for allocating the settlement proceeds with the Court." *Cisneros v. EP Wrap-It Insulation, LLC*, Civ. No. 19-500 GBW/GJF, 2022 WL 2304146, at *10. The Settlement Agreement is attached hereto as Exhibit 1.

    d.   The Settlement Treats Settlement Class Members Equitably Relative to Each Other

The Settlement Class Members are treated equitably relative to each other. Settlement Class Members are all eligible for the same relief. Additionally, the method of calculating and administering the relief to Settlement Class Members is also the same relative to each other. *See Montgomery*, Case No. 2:19-cv-940 GJF, 2021 WL 1339305, at *7.

**2.   The Settlement Terms are Fair, Reasonable, and Adequate Under the *Rutter* Factors.**

In determining whether a class action settlement is fair, reasonable, and adequate, the trial court should also consider the four factors set forth in *Rutter & Wilbanks Corp. v. Shell Oil Co.*:

(1) Whether the proposed settlement was fairly and honestly negotiated;
(2) Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3) Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) The judgment of the parties that the settlement is fair and reasonable.

314 F.3d 1180, 1188 (10th Cir. 2002); *Jones v. Nuclear Pharma., Inc.* 741 F.2d 322, 324 (10th Cir. 1984) (same). Courts will usually presume that the proposed settlement is fair and reasonable if the settling parties can establish the *Rutter* factors. *See Martinez v. Reams*, No. 20-cv-00977-PAB-SKC, 2021 WL 603054, at *4 (D. Colo. Feb. 16, 2021).

    a.   Whether the Proposed Settlement Was Fairly and Honestly Negotiated

As explained more fully above, the negotiations were fairly and honestly negotiated at arm's length by experienced counsel. *See Lucas*, 234 F.R.D. at 693.

    b.   Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

Plaintiffs believe they have built a compelling case for liability. With respect to Plaintiffs' negligence claim, Plaintiffs believe they will ultimately be able to offer evidence that RMCHCS

was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the loss of Plaintiffs' PII and PHI. Plaintiffs believe they have a reasonably good chance of proving that RMCHCS's data security was inadequate and that, if they establish that central fact, RMCHCS is likely to be found liable under at least some of the liability theories and common law Plaintiffs pled in their Complaint.

While Plaintiffs believe they have solid claims and would be able to prevail, their success is not guaranteed, especially where serious questions of law and fact exist, which is common in data breach litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). While Plaintiffs strongly believe in the merits of their case, they also understand that RMCHCS will assert a number of potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). While Plaintiffs have made it past the pleadings, class certification is another hurdle that Plaintiffs will have to meet—and one that been denied in other cybersecurity incident cases.[8] *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013). Moreover,

---

[8] In fact, in one of the most recent significant data breach class actions that have been certified on a national basis, this risk is very real. *In re Brinker Data Breach Litig*., No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) is presently on appeal to the United States Court of Appeals for the Eleventh Circuit, and it is currently an open question whether the *Brinker* plaintiffs will maintain class certification. This over-arching risk simply puts a point on what is true in all class actions—class certification through trial is never a settled issue.

damages methodologies in data breach cases, while sound in Plaintiffs' view, remain untested in a class certification setting and unproven in front of a jury. And lastly, establishing causation on a class-wide basis in a data security incident case is rife with uncertainty. It is obvious that Plaintiffs' success at trial is far from certain. Through settlement, Settlements Class Members gain significant benefits without the risk of receiving no relief at all.

          c.   <u>The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation</u>

The Settlement guarantees Settlement Class Members real, immediate relief for harms, and assurance that they are less likely to be subject to similar breaches, rather than the mere possibility of future relief after expensive, protracted litigation. The Settlement Class Members' path to recovery through litigation is full of risks, each, by itself, could impede the successful prosecution of this matter through trial and eventual appeals, potentially resulting in zero recovery. While early settlement has allowed costs to stay modest, and the Settlement Agreement provides for costs to be paid for separate and apart from the funds available to the class—protracted litigation would serve to increase costs and have a potentially negative affect on class recovery—making Settlement the more prudent course of action.

          d.   <u>The Parties Believe the Settlement is Fair and Reasonable</u>

The judgment of experienced Plaintiffs' Counsel and Plaintiffs supports a finding that the Settlement is fair and reasonable. In negotiating the Settlement, Plaintiffs' Counsel relied on published reports documenting the Data Breach, identity theft costs, actual costs incurred by Settlement Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data breach litigation, and reported settlements in other data breach litigation. The monetary benefits offered to Settlement Class Members are more than fair and reasonable in

light of reported average reimbursable expenses for similar data breach incident cases. Here, the benefits compare favorably to what Settlement Class Members could recover if successful at trial. In Plaintiff's Counsels' view who have litigated numerous data breach cases, have spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by the Settlement should be considered an outstanding result for the Settlement Class. Further, Plaintiff's Counsel and Plaintiffs fully endorse the Settlement. *See* Lietz Decl, ¶ 40.

Thus, the Settlement is fair, reasonable, and adequate under the Rule 23 and the *Rutter* factors, and the Court should grant preliminary approval and allow notice to issue to the class.

### C.    The Proposed Claims Administrator Will Provide Adequate Notice.

Due process requires provision of the best notice that is practicable under the circumstances, including notice to all class members who can be identified through reasonable effort. *See* Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement Agreement is designed to be the best practicable. *See* S.A. Ex. B. The Notice plan provides for direct and individual notice to be provided to all Settlement Class Members via mail or email, if applicable, based off of the contact information provided by the Settlement Class Members when they provided their PII and PHI to RMCHCS. *See generally* Ferruzzi Decl. The Claims Administrator will establish and maintain a dedicated Settlement Website that will be updated throughout the claims period with relevant documents and court filings. *See id.* The Claims Administrator will also establish and maintain a toll-free help line and designated P.O. Box. *See id.*

The notices are clear and straightforward. They define the Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the Settlement; disclose the requested Service Awards and the amount Class Counsel intends to seek in attorneys' fees, costs, and expenses; explain procedures for making claims, objections, or requests for exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Approval Hearing; and prominently display the address and phone number of Class Counsel.

The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement. *See, e.g., City of Gallup, New Mexico*, Case No. 2:07-cv-00644-JAP/CG, 2013 WL 12688653, at *1 (holding best practicable notice was where class had full opportunity to object to proposed settlement and to participate in final approval hearing).

Thus, the Rule 23(e) requirements and *Rutter* factors are satisfied.

### D.    Appointment of the Claims Administrator.

In connection with the notice plan and settlement administration, the Parties request that the Court appoint Kroll to serve as the Claims Administrator. *See* Section III.C; Lietz Decl., ¶ 49; Ferruzzi Decl.

### E.    Appointment of Settlement Class Counsel.

Plaintiffs request appointment of Attorneys David K. Lietz and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") as Class Counsel. Proposed Class Counsel have extensive experience prosecuting class actions and other complex cases—in particular, data breach cases. *See* Lietz Decl., ¶¶ 2-19 & attached Milberg Firm Resume.

26

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement. The Settlement is well within the range of reasonable results. For these and the above reasons, Plaintiffs respectfully request this Court to grant their Motion for Preliminary Approval of Class Action Settlement.

Dated: October 25, 2022                    Respectfully submitted,

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**

/s/ *David K. Lietz*
David K. Lietz (admitted *pro hac vice*)
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015
Tel: 866-252-0878
Fax: 202-686-2877
dlietz@milberg.com


Kristina Martinez
**EGOLF + FERLIC +**
**MARTINEZ + HARWOOD, LLC**
123 W. San Francisco Street, Second Floor
Santa Fe, NM 87501
Tel: (505) 986-9641
KMartinez@EgolfLaw.com


Gary M. Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel:  866-252-0878
Fax:  865-522-0049
gklinger@milberg.com

*Attorneys for Plaintiffs and the Proposed*
*Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of October 2022, I served a copy of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support Thereof on Defendant's counsel of record via electronic mail.

/s/ *David K. Lietz*
David K. Lietz