IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALICIA CHARLIE, *et al.*,

        Plaintiffs,

        v.                                                CIVIL NO. 21-652 SCY/KK

REHOBOTH MCKINLEY CHRISTIAN
HEALTH CARE SERVICES,

        Defendant.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Alicia Charlie, Leona Garcia

Lacey, Darrell Tsosie, and E.H., by and through his guardian, Gary Hicks (collectively,

"Plaintiffs"), on behalf of themselves and a class of similarly situated individuals, hereby submit

this Motion for Final Approval of Class Action Settlement and Memorandum in Support.

**I.     INTRODUCTION**

On January 9, 2023, this Court preliminarily approved the Settlement between Plaintiffs

and Defendant Rehoboth McKinley Christian Health Care Services ("RMCHCS"), and ordered

that notice be given to the class. ECF 45. The Settlement negotiated on behalf of the Settlement

Class provides for four (4) categories of relief for Settlement Class Members: (1) reimbursement

for lost time (up to four (4) hours at $15 per hour) and ordinary out-of-pocket expenses up to $500;

(2) reimbursement for extraordinary losses up to $3,500; (3) two (2) years' free credit monitoring

services; and (4) equitable relief in the form of security improvements to RMCHC's systems.  In

addition, Defendant has and will pay the entire cost of notice and claims administration, which is

estimated to be $206,112 through completion, and is another substantial benefit to the Settlement Class. *See* Declaration of Scott M. Fenwick Regarding Notice Dissemination and Settlement Administration ("Fenwick Decl."), attached hereto as Exhibit 1, ¶ 19.

Settlement Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after an extensive investigation, opposing a substantial motion to dismiss, and prolonged arms'-length negotiations. This Settlement represents an excellent result for the Settlement Class in this litigation and was obtained against a stout defense mounted by RMCHCS, which was represented by a well-regarded law firm with considerable experience defending data breach cases. This result was achieved only after fending off a motion to dismiss that created substantial challenges for Plaintiffs. *See* ECF 15. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and the Plaintiffs would face risks at each stage of litigation. Against these risks, it was through the hard-fought negotiations and the skill and hard work of Settlement Class Counsel and the Class Representatives that the Settlement was achieved for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class Members via first class mail. Class Notice reached 93.3% of the Class, easily meeting the due process standard. *See* Fenwick Decl., ¶ 12. The Notices were written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement. *Id*. at Exhibits B and C. Out of 191,009 Settlement Class Members who were mailed notice of the Settlement, only eleven (11) sought to be excluded from the Settlement, and **none** have objected.

*Id*. ¶¶ 17-18; *see also* Declaration of David Lietz ("Lietz Fee Decl."), attached hereto as Exhibit 2, ¶ 2.

Plaintiffs now move the Court for final approval. The Settlement meets all the criteria for final approval. The Court should grant final approval, and also grant the Plaintiffs' request for attorneys' fees, expenses, and service awards.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 39) filed on October 25, 2022 and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith**.** Plaintiffs also incorporate by reference the Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 47), filed on March 27, 2023.

## III.    SUMMARY OF SETTLEMENT

### A.    <u>Settlement Benefits</u>

The Settlement Class is defined as:

> All persons to whom on or about May 19, 2021 Rehoboth McKinley Christian Health Care Services sent Notice of a Data Breach that was discovered on February 16, 2021, which involved an unauthorized person gaining access to certain systems containing PII/PHI.

Settlement Agreement ("S.A."), ECF 39-1, ¶ 1. The Settlement Class specifically excludes:

> (i) RMCHCS's officers and directors; (ii) any entity in which RMCHCS has a controlling interest; and (iii) the affiliates, legal representatives, attorneys, successors, heirs, and assigns of RMCHCS (not including employees); and (iv) members of the judiciary to whom this case is assigned, their families and members of their staff.

*Id.* The Settlement Class is comprised of approximately 191,009 individuals. *See id.*

The Settlement negotiated on behalf of the Settlement Class provides for four (4) categories of relief for Settlement Class Members: (1) reimbursement for lost time (up to four (4) hours at $15 per hour) and ordinary out-of-pocket expenses up to $500; (2) reimbursement for extraordinary losses up to $3,500; (3) two (2) years' free credit monitoring services; and (4) equitable relief in the form of security improvements to RMCHC's systems. *See id.* ¶¶ 3(a)-(d), 4. While the lost time and expense reimbursements are capped on an individual basis, they are uncapped in the aggregate, meaning each individual and qualified claimant could receive the full $4,000 monetary benefit, plus the credit monitoring and the data security enhancements.

### a.    Reimbursement for Lost Time and Ordinary Expenses.

The first category of benefits provides Settlement Class Members who submit a valid claim up to $500.00 per person for reimbursement of ordinary expenses incurred as a result of the Data Breach, such as bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; and fees for credit reports, credit monitoring, or other identity theft insurance product purchased between May 19, 2021 and the date of the Settlement Agreement. *See id.* ¶ 3(b). As part of the $500.00 ordinary expense reimbursement (and not in addition to), Settlement Class Members who submit a valid claim may also receive compensation at $15.00 per hour, for a maximum of $60.00 per person, for up to four (4) hours' lost time spent dealing with the Data Breach, if at least one (1) full hour was spent dealing with the Data Breach. *See id.* The Settlement Class Member merely needed to attest that he or she spent the claimed time responding to issues raised by the Data Breach. *See id.*

**b.      Reimbursement for Extraordinary Expenses.**

The second category of benefits allows Settlement Class Members who submit a valid claim to collect up to $3,500.00 per person in compensation to each Settlement Class Member who was the victim of actual documented identity theft for proven monetary loss if:

      i.      The loss is an actual, documented, and unreimbursed monetary loss;

      ii.      The loss was more likely than not caused by the Data Breach;

      iii.      The loss occurred during between May 19, 2021 and the date of the Settlement Agreement;

      iv.      The loss is not already covered by the Ordinary Expense category above; and the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

*See id.* ¶ 3(c).

**c.      Credit Monitoring Services.**

The third category of benefits allowed Settlement Class Members to make a claim for two (2) years of free credit monitoring services. *See id.* ¶ 3(d). Settlement Class Members who claimed this benefit will be mailed (or emailed, if they prefer) an activation code and instructions to enroll in the services once the Settlement becomes final. *See id.* Ex. C. This Settlement benefit bears with it significant value. The current least expensive credit monitoring services product available in the retail marketplace today costs approximately $8.95 per month, down from the $9.99 previously reported to the Court.[1] Thus, the retail value of two (2) years of this benefit is $214.80 per Settlement Class Member.

---

[1]Protect Your Future Today | Aura (last visited May 9, 2023) (showing $9 per month cost for identity theft protection).

d.    **Data Security Enhancements.**

The final category of benefits provided for in the Settlement Agreement is equitable in nature. RMCHCS has implemented security-related improvements since the Data Breach designed to better protect Plaintiffs' and Settlement Class Members' PII and PHI in the future. *See id.* ¶ 4. Defendant's information security improvements included multiple software upgrades, improved firewalls and web filters, multifactor authentication, and operating system updates. In addition, Defendant added to its information security programs enhanced training, security audits, and response to the audits. Defendant's information security improvement have and will cost in excess of $1.7 million when all aspects are implemented.

B. **Fees, Costs, and Service Awards**

Plaintiffs previously moved for a combined attorneys' fee and expense award of $300,000. *See* ECF 47. Plaintiffs also moved for and seek reasonable service awards in the amount of $2,500 for each named Plaintiff ($10,000 total). There has been no objection to the attorneys' fee request, and no opposition was filed to Plaintiffs' motion for attorneys' fees, expenses, and service awards.

IV.   **LEGAL STANDARD**

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. ECF 45. For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF 39), this Court should certify the class for purposes of final approval of the Settlement.

Next, the Court must determine whether the settlement is fair, reasonable, and adequate. "'The trial court exercises discretion to approve a class action settlement.'" *City of Gallup, New Mexico v. Hotels.com, L.P.*, No. 2:07-cv-00644-JAP/CG, 2013 WL 12201049, at *2 (D. N.M. Oct. 4, 2013) (citing *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)). In doing so, "'the trial court must approve a settlement if it is fair, reasonable, and adequate'" under all of the circumstances. *Id.*

Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

In the 10th Circuit, approval of a class action must also satisfy the factors set out by the court in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Specifically, the factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under F.R.C.P. Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the

mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable. *Id.*

### 1.   ARGUMENT

Here, the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* factors, and should be finally approved.

#### 1.   *Whether the settlement was fairly and honestly negotiated.*

Here, the negotiations occurred at arm's length by experienced litigation counsel, which are presumed to be fair, reasonable, and adequate. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). The Parties produced formal and informal discovery, including information about the scope and cause of the Data Breach and class size. *See* ECF 39-2, Lietz Decl., ¶ 36. After extensive, non-collusive negotiations, the Parties reached an agreement on the principal terms of the Settlement. *See id.* ¶ 36. The Parties continued to negotiate the finer details of the Settlement Agreement and its exhibits over the next several months. *See id.* ¶ 38. The negotiations were adversarial, but professional. *See id.* ¶ 35. Also, the negotiations furthered the Settlement Class's interests, given the substantial relief achieved on behalf of the Settlement Class. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas*, 234 F.R.D. at 693. This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

#### 2.   *The Strength of the Plaintiffs' Case.*

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that RMCHCS's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and

common law Plaintiffs pled in their Complaint.  While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. In contrast, the value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data security incident litigation. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions); This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). This case is no exception to that rule. It involves 191,009 class members, complicated and technical facts, and a well-defended and motivated defendant..

Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

### 3.    *The risk, expense, complexity, and likely duration of further litigation.*

While Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately roughly 191,009 individuals (each of whom may need to establish cognizable harm and causation); a complicated and technical factual background; and a sympathetic Defendant (a not-for-profit hospital in a geographic area with limited healthcare providers). Defendant has already asserted (by way of their motion to dismiss) and will assert a number of potentially case-dispositive defenses, further increasing Plaintiffs' risk of further litigation.

9

Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. *See, e.g.*, *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was announced in June 2022, after five full years of litigation.

There are inherent risks associated with taking any data breach class action to trial, including pre-trial risks of obtaining and maintaining class certification and defeating summary judgment. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (refusing to grant class certification in data breach class action). Plaintiffs will also need to overcome issues with establishing causation and damages—which are novel and untested in a disputed class action setting in a data breach case. *See Southern Independent Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396, at *8 (M.D. Ala. Mar. 13, 2019) (holding under *Daubert* motion that causation was not met for class certification purposes in data security breach case); *In re TJX Cos. Sec. Breach Litig.*, 246 F.R.D. 389, 398 (D. Mass. Nov. 29, 2007) ("[T]he need for individualized damages decisions does not ordinarily defeat predominance where there are ... disputed common issues as to liability.'") (quoting *Tardiff v. Knox Co.*, 365 F.3d 1, 6 (1st Cir. 2004)). Plaintiffs in data breach cases also often allege injuries, such as the risk of future identity theft, and loss of control of their sensitive information, which are the subject of intense controversy.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis is rife with uncertainty. Thus, this factor favors approval.

### 4.    *The risk of maintaining class action status throughout the trial.*

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data incident cases is not common—first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). In one of the four significant data incident class actions mentioned above that have been certified on a national basis, this risk is very real. *In re Brinker, supra*, is currently on appeal to the United States Court of Appeals for the Eleventh Circuit, and it is currently an open question whether the *Brinker* plaintiffs will maintain class certification. This over-arching risk simply puts a point on what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the Plaintiffs.

### 5.    *The amount offered in settlement.*

In light of the risks and uncertainties presented by data incident litigation, the value of the Settlement favors approval. The Settlement makes significant relief available to Settlement Class

Members. Each Class Member is eligible to make a claim for up to $500 in reimbursements for

expenses and lost time, and up to $3,500 in reimbursements for extraordinary expenses related to

the Data Incident. Class Members had the ability to claim 4 hours of lost time spent dealing with

the effects of the Data Incident, reimbursed at $15 per hour, by merely attesting that time was

spent. In addition to the potential cash recovery, each and every Settlement Class Member could

claim two-years of credit monitoring and identity theft protection, regardless of whether they

suffered any harm other than having their data compromised in this incident.  As set out above,

the retail value of this credit monitoring is $214.80 per Settlement Class Member.

This settlement is a strong result for the Class, and is in line with other settlements in cases

involving data incidents of similar scope, including those approved by courts in New Mexico.

Because the settlement amount here is similar to other settlements reached and approved in similar

cases, this factor reflects that the Settlement is fair. *See* Lietz Fee Decl., Exhibit 2, ¶ 3; *see also*

*Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at \*7-8 (C.D. Cal.

Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the

difficulties and expenses Class Members would face to pursue individual claims, and the

likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See*

*id*. Accordingly, this factor favors approval.

### 6.       *The amount of discovery completed.*

Before entering into settlement discussions on behalf of class members, counsel should

have sufficient information to make an informed decision. Prior to filing, Plaintiffs vigorously and

aggressively gathered all of the information that was available regarding RMCHCS and the Data

Incident—including publicly-available documents concerning announcements of the Data Incident

and notice of the Data Incident to RMCHCS's current and former patients. ECF 39-2 ¶ 24. The

Plaintiffs also engaged in formal discovery in this case, including propounding interrogatories and document requests to Defendant, and reviewing the responses thereto (including document review). *Id.* at ¶ 36. Defendant also provided certain informal discovery that was attendant to the settlement discussions and negotiations. *Id*. The pre-suit discovery as well as the formal and informal discovery fully informed Plaintiffs of the facts and circumstances of this data security incident, and the litigation risks that Plaintiffs faced.

Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. *See generally* ECF 39-2 ¶¶ 2-19 (detailing Class Counsel's experience). "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc*., No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Plaintiffs are well informed about the strengths and weaknesses of this case.

### 7.    *The experience and views of counsel.*

The judgment of experience Plaintiffs' counsel also supports a finding that the settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data incident litigation, and reported settlements in other data incident class actions. The monetary benefits offered to Settlement Class Members are fair and reasonable in light of reported average out-of-pocket expenses incurred due to a data security incident.

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel who have litigated numerous data breach cases, have spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result and benefit to the Class. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data incident class actions that have been approved by other courts. *See* Ex. 2, ¶ 3.

Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, Class Counsel fully endorses the Settlement.

### 8.       *Reaction of the Class Members*.

The reaction of the Settlement Class to this Settlement was extremely positive.  Out of a class of 191,009, only 11 Class Members requested exclusion and there were no objections. *See* Exhibit 1, ¶¶ 17-18.   5,171 total claims were submitted, including 280 paper claim forms and 4,891 claim forms submitted electronically. *Id*. at ¶¶ 13.  This amounts to a 2.7% claims rate, a rate that meets and far exceeds the typical claims rate in data breach settlements. See Ex. 2, ¶ 4.

Moreover, CAFA notice was sent to the Attorney General of the United States and 56 state and territory Attorneys General, including the New Mexico Attorney General. *Id*. at ¶ 4.  There has been no objection from any Attorney General's office.

Under all the *Jones* factors, this proposed settlement is fair, reasonable, and adequate, and should be finally approved.

> **9.**     ***The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Due Process as well as Rule 23.***

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Short Form Notice sent by First Class Mail is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in

a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851, 208 L. Ed. 2d 425 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.")(internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). On February 8, 2023, Kroll caused the "Short Notice" in the form of a postcard to be sent by U.S. first class mail to 191,009 Settlement Class Members. Ex. 1, ¶ 9. The Short Notice provided an overview of the settlement terms, the benefits available, the options available to Class Members, and the settlement website and toll-free number where additional settlement information could be obtained. *Id.* After all address tracings and remailings, Kroll delivered 178,216 Short Notices, equating to a delivery success percentage (or "reach rate") of 93.3%. *Id*. at ¶ 12.  Kroll (through its representative Mr. Fenwick, an experienced professional in the field of providing class action notice) offers the opinion that the delivery success percentage of 93.3% meets and exceeds the 70% threshold necessary to satisfy due process requirements. *Id*. at ¶ 12.

Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with Notice Programs approved in New Mexico, the Tenth Circuit and across the United States. 93.3%  is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010).

In addition to the direct mail notice, on January 26, 2023 Kroll established a dedicated website for the Settlement with an easy to remember domain name (www.rehobothdatasettlement.com). *Id*. ¶ 6. Relevant documents were posted on the website for Settlement Class Members to review, including the Long Notice in English, Spanish, and Navajo. *Id*. Also, on January 20, 2023, a toll-free telephone number (833-709-0092) was established for the Settlement. *Id*. ¶ 7. The toll-free telephone number was prominently displayed in all notice documents. Settlement Class Members were able to call and obtain additional information regarding the settlement through an Interactive Voice Response ("IVR") system and/or by being connected to a live agent.  As of May 2, 2023, the IVR has received 1,377 calls, and 588 callers have been connected to Live Operators. *Id*.

In short, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23, and satisfies due process requirements. The Notice Plan provided the best notice practicable, and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines.

## VI.  CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members the opportunity to claim significant cash relief, and valuable credit monitoring to all those who previously signed up as well as to those who made claims. The Settlement Agreement was reached only after extensive arm's-length negotiations, and an assessment of the *Jones* factors weighs in favor of Final Approval. For the reasons discussed above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 39) and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 47), Plaintiffs respectfully request this Court enter the proposed Final Approval

Order filed with the Motion for Final Approval, finally certify the Settlement Class and appoint

Settlement Class Counsel and Plaintiffs as representatives for the Class, award Named Plaintiffs a

service award in the amount of $2500 each, grant Settlement Class Counsel combined attorneys'

fees and expenses of $300,000, and grant final approval of this Settlement.

Dated: May 10, 2023                           Respectfully submitted,

                                         *s/Kristina Martinez*
                                         Kristina Martinez
                                         **EGOLF + FERLIC +**
                                         **MARTINEZ + HARWOOD, LLC**
                                         123 W. San Francisco Street, Second Floor
                                         Santa Fe, NM 87501
                                         Tel: (505) 986-9641
                                         KMartinez@EgolfLaw.com

                                         David K. Lietz (admitted *pro hac vice*)
                                         **MILBERG COLEMAN BRYSON**
                                         **PHILLIPS GROSSMAN, PLLC**
                                         5335 Wisconsin Avenue NW, Suite 440
                                         Washington, D.C. 20015-2052
                                         Tel: 202-744-1795
                                         Fax: 202-686-2877
                                         dlietz@milberg.com

                                         Gary M. Klinger (admitted *pro hac vice*)
                                         **MILBERG COLEMAN BRYSON**
                                         **PHILLIPS GROSSMAN, PLLC**
                                         227 W. Monroe Street, Suite 2100
                                         Chicago, IL 60606
                                         Tel:  866-252-0878
                                         Fax:  865-522-0049
                                         gklinger@milberg.com

                                         *Attorneys for Plaintiffs and the Settlement*
                                         *Class*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2023 the foregoing document was filed via the U.S. District Court of New Mexico's CM/ECF electronic filing system and a copy thereof was served via the CM/ECF electronic transmission upon all counsel of record, as reflected by the Court's CM/ECF system.

/s/ *Kristina Martinez*
Kristina Martinez
