**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**Before the Honorable Steven C. Yarbrough**
**United States Magistrate Judge**

**Clerk's Minutes**

*Charlie et al v. Rehoboth McKinley Christian Health Care Services*, 21cv652 SCY/KK

Wednesday, May 24, 2023 at 10:00 a.m.

**Attorneys present for Plaintiffs:**          Kristina Martinez
                                               David Lietz

**Attorneys present for Defendant:**          Vanessa Garcia

**Type of proceeding:** Final Class Action Settlement Approval Hearing
                        Total Time – 2 hours
                        Recording: Zoom

**Court's notes/rulings:**

- The Court initiates the hearing and counsel enter their appearances. The Court is on the record. The Court notes that the hearing is live streamed on the Court's website and inquires whether any class member has indicated they wish to appear. All counsel report that they are not aware of any class members who wish to appear.
- Plaintiffs' counsel confirms there were no objections from class members and no side agreements.
- The Court addresses the supplemental declaration from Kroll and notes that more than two-thirds of the claim forms were deemed invalid. The Court noted in November that it would be unlikely that most class members had documentation to support their claims for expenses. But the Court is concerned that minor issues with filling out the forms made a claim invalid, such as leaving off a phone number or email.
- Plaintiffs' counsel indicates the invalid claims are not due to minor issues such as leaving off an email. And for those minor issues, Kroll is sending deficiency notices and offering the claimant an opportunity to cure the defect. The major issue is foreign hackers getting around the claim ID requirement and filing a significant number of claims not on behalf of class members. There are 218 claims with deficiencies in the forms by legitimate class members. There are 3700 that are suspected of being fraudulent; Kroll is still working through the issue.
- Plaintiffs' counsel addresses how notice reached the class and the evidence that the class understood the notice.
- The Court inquires whether final approval can be granted while Kroll is working through these issues. Plaintiffs' counsel argues that final approval does not need to wait, but he would like to correct the record as to the claims rate. Due to this, legitimate claims have

- dropped below a 1% claims rate, and Plaintiffs' counsel agrees that is light. The low rate of claiming credit monitoring indicates that saturation may have occurred because of the ubiquity of data breaches and this relief being offered in multiple fora. Plaintiffs' counsel argues the settlement is fair, reasonable, and adequate and in line with the other settlements approved in federal courts around the country.
- The Court explains its view that the settlement is reasonable because the class did not have other options for relief.
- Both counsel agree with the Court's reasoning.
- The Court indicates it will approve the settlement.
- The Court addresses the request for attorney's fees and discusses Tenth Circuit precedent requiring heightened scrutiny of clear-sailing agreements with a kicker that reverts unawarded funds to the defendant, *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1085 (10th Cir. 2021). The Court discusses the difference between settlements that are a common fund, a constructive common fund, or contractual fee-shifting, citing *In re Home Depot Inc.*, 931 F.3d 1065 (11th Cir. 2019). The Court discusses the need to know the value of the settlement to the class before awarding attorney's fees and whether more information from Kroll is necessary, citing *Fager v. CenturyLink Communications, LLC*, 854 F.3d 1167, 1176 (10th Cir. 2016). The Court's focus is on what was actually provided to the class, not what was theoretically provided to the class. The Court also cites *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983), which discusses how to calculate the lodestar and indicates that hourly rates should be local, not national. The Court addresses Tenth Circuit precedent on incentive awards to the class, citing *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 467-68 (10th Cir. 2017).
- The Court asks Ms. Garcia to address the cost of credit monitoring. Ms. Garcia states it is an extension of already-offered monitoring. The Court inquires as to the actual cost to Defendant and she indicates she will look into it.
- Plaintiffs' counsel argues credit monitoring should be valued to the class at retail value, not what Defendant pays, because class members on their own cannot obtain credit monitoring at the price Defendant is paying. He estimates Defendant is probably paying less than $20 a person for two years. The equivalent cash distributed to class members would not be a high value, after transaction costs. Plaintiffs' counsel discusses his experience with cash-settlements and low claim rates. When it comes to settling claims, for example, Defendants simply do not offer $200 in cash to class members. In this case, neither Defendant nor Defendant's insurance policies had this kind of reserve.
- Plaintiffs' counsel argues the attorney's fees should be measured by the potential benefit created by class counsel, rather than the claimed benefit. The actual monetary benefit so far according to Kroll, including retail value of claimed credit monitoring, adds up to $287k. Class counsel argues that some percentage of the value of security enhancements to Defendant's data practices should be valued as well. Counsel argues around a third of the $1.7 million should be considered to be Plaintiffs' contribution to the injunctive relief (that is, the third year of improvements and after this settlement was reached). Plaintiffs audited the changes after they were implemented to see if they worked as designed and to the desired ends. In addition, the cost of administration should be counted as a benefit to the class. Kroll charged over $200k to administer this settlement. Finally, the attorney's fees themselves should be included as part of the benefit. The total value is a little over a

- million; $300k is thirty percent of that and falls within a benchmark that courts in the Tenth Circuit routinely approve.
- Looking at the lodestar, Plaintiffs' counsel argues for a multiple of 1.5 after the calculation due to the uncertainty of the claims rates in this case. Counsel argues for national hourly rates because the data breach cases are a national market. There are no specialized data-breach class-action lawyers who practice out of New Mexico. Counsel argues that he works efficiently and the goal should not be to amass a large lodestar amount.
- The Court agrees the attorneys' billing is very efficient and has no concerns on that front. Nonetheless, because the Court is considering assessing a different billable rate for work related to issues particular to New Mexico law than to work requiring class action expertise, the Court requests that informal billing statements be submitted to the Court for review in camera (which will allow Plaintiff to avoid the extra expense of reviewing and redacting attorney client privileged material). Plaintiffs' counsel agrees and will send it to yarbroughproposedtext@nmd.uscourts.gov.
- Plaintiffs' counsel reiterates that the class settlement and attorney's fees were litigated separately. The expenses in the case were very low. Plaintiffs' counsel notes that it is Defendant's insurer who would get the benefit of a reduction in attorney's fees.
- Defendant's counsel addresses the issue of the cost of credit monitoring and will supplement the information. The Court requests Defendant consider whether the information can be filed publicly or under seal.
- Plaintiffs' counsel addresses the expenditure of time and involvement of class representatives in the case. Counsel addresses the difficulty of finding class representatives in this geographic area and the fact that Defendant is the only facility that can serve their medical needs. The class representatives are suing their only hospital option, and suffered community impacts for doing so.
- The Court agrees it is a relevant factor that the class representatives stepped up on behalf of the class. The Court acknowledges the time spent on the case from the class representatives.
- Plaintiff's counsel discusses how settlement approval and attorney's fees can be decided separately. The Court agrees and expects to enter a settlement approval order quickly, with a decision on attorney's fees to follow.
- There being nothing further, the Court concludes the hearing.